IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MILLARD GUTTER COMPANY, a Corporation d/b/a MILLARD ROOFING AND GUTTER,<br><br>                      Plaintiff,<br><br>vs.<br><br>CONTINENTAL CASUALTY COMPANY, a/k/a CNA or d/b/a CONTINENTAL INSURANCE, and NATIONAL FIRE INSURANCE COMPANY OF HARTFORD,<br><br>                      Defendants. | 8:18-CV-527<br><br>MEMORANDUM AND ORDER |

The plaintiff, Millard Gutter Company, alleges in its amended complaint that the defendants, Continental Casualty Company and National Fire Insurance Company, breached insurance policies with two of their insureds regarding hail damage claims. The defendants move for summary judgment. Filing 35. The Court will grant the defendants' motion and dismiss the plaintiff's amended complaint.

## I. STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). Credibility

determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis County*, 653 F.3d 745, 751 (8th Cir. 2011). The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

## II. BACKGROUND

The plaintiff's complaint concerns the defendants' conduct in adjusting and paying two claims for hail damage. The first claim concerns Midwest Screw Products (MSP), regarding damage to its building in Omaha, Nebraska, during an April 9, 2013, hailstorm. Filing 37-1 at 1. Brian Oddo, MSP's employee and a corporate officer, was approached by the plaintiff's representative who offered to inspect MSP's building for hail damage. When damage was found, Oddo submitted a claim to MSP's insurer, defendant National Fire. At some point, James Eggers, the plaintiff's general manager, presented MSP with a form document titled "Authorization to Proceed," which was signed by Eggers and Chuck Oddo on behalf of MSP. Filing 37-2; filing 41 at 9.

The Authorization allowed the plaintiff to proceed with the hail damage repair work on MSP's building, and authorized the plaintiff to "negotiate

approval for payment or reimbursement of expenses associated with any necessary repair work with [MSP's] insurer." *Id.* The Authorization also assigned to the plaintiff, the "right and power to make demand upon any potentially liable insurance company for payment," subject to MSP's obligation to pay its deductible. An acknowledgment clause provided that MSP recognized that the agreement did not discharge MSP from its liability for the plaintiff's services, but that MSP would be entitled to a credit for payments made by an insurer. Finally, the agreement provided that MSP authorized its insurer to make payment directly to the plaintiff, or to name the plaintiff as a joint payee on any payment. Eggers transmitted a copy of the Authorization to "CNA/Hartford Fire" and was then contacted by an adjuster authorized to handle MSP's hail damage claim. Filing 41 at 9.

At some point, Brian Oddo for MSP, National Fire's claim representative, and the plaintiff's representative (perhaps Eggers), met to resolve divergent views on the scope of damage to MSP's building. Filing 37-1 at 2. Eggers claims that there was never an agreed "scope of loss" and that National Fire refused to approve additional work that the plaintiff believed was necessary to fully repair the storm damage. Filing 41 at 10. Oddo, however, believes that there was an agreement as to the scope of damage, and the agreement included the plaintiff. Filing 37-1 at 2. According to Oddo, some damaged items were to be repaired, while other items were to be replaced. Ultimately, National Fire agreed to pay for the losses within what Oddo believed was the agreed-upon scope of loss, and the plaintiff made the agreed-upon repairs. *Id.*

National Fire issued claim payments directly to MSP, and MSP would then issue payments to the plaintiff. Filing 37-1 at 2-3. According to Oddo, National Fire paid all amounts due under the agreed-upon scope of loss, and

3

MSP paid the plaintiff for all of the work it actually performed. Filing 37-1 at 3. Further, Oddo represents that the plaintiff cashed all of the checks issued by MSP, and has never notified MSP that there is damage that still needs to be repaired, or payments that are due and owing.

The second claim concerns Dr. David Schroeder's building in Norfolk, Nebraska, which sustained damage in a hailstorm on June 3, 2014. Schroeder's property was insured by defendant Continental Casualty. Filing 37-4 at 1. Schroeder contacted the plaintiff, and met with Eggers on June 5. Filing 41 at 4. Eggers reported observing obvious and substantial damage to Schroeder's building that required repair. Eggers presented Schroeder with the plaintiff's "Authorization to Proceed" standard form (identical to the form presented to Oddo) and explained its terms. Schroeder agreed to the terms and signed the Authorization that same day, June 5. Filing 37-5; filing 41 at 5. Eggers transmitted a copy of the Authorization to CNA/Hartford Fire, and was then contacted by an adjuster. Filing 41 at 5.

Eggers claims that Continental Casualty refused to authorize and approve all repairs that he believed were necessary to correct the storm damage. Eggers also claims that there was never an agreement with Continental Casualty regarding the scope of repairs, and that Continental Casualty indicated it would not pay for any work that was not approve. Filing 41 at 6. Schroeder, however, reports meeting with the plaintiff's representative and Continental Casualty's representative, and coming to an agreement on the scope of the loss and damage—agreeing that some items would be repaired, and others would be replaced. Filing 37-4. Like Oddo, Schroeder reports that Continental Casualty paid for all agreed-upon repairs. Continental issued payments directly to Schroeder, and then Schroeder issued payment to the plaintiff. *Id.* Schroeder represents that he paid the plaintiff for all work

4

actually performed, that the plaintiff cashed all of his payment checks, and that the plaintiff has never made a claim to him that a payment was due and owing. *Id.*

### III. DISCUSSION

#### FAILURE TO PAY BENEFITS DUE AND OWING

The plaintiff alleged that the defendants breached their insurance policies in two regards. First, the plaintiff alleged that the defendants failed to pay "all benefits due and owing under the policies." Filing 21 at 4. It appears that the factual basis underlying this allegation is two-fold. Eggers, in his affidavit, reports that the plaintiff's damages claim concerns work it would have performed had the defendants not breached their obligations and refused to approve and authorize all work. Filing 41 at 9-10. As the Court understands it, the defendants' refusal to approve and authorize all work the plaintiff believed was necessary is one of the predicates for the allegation that all benefits due and owing under the policies were not paid.

The plaintiff argues that an insured's post-loss claim for repair of storm damage arising pursuant to an insurance policy is assignable. Filing 40 at 7-14. That basic proposition is not in dispute. A post-loss assignment of insurance proceeds is customary in the roofing and gutter repair industry, and valid under Nebraska law. *Millard Gutter Co. v. Farm Bureau Prop. & Cas. Co.*, 889 N.W.2d 596, 604-05 (Neb. 2016). But here, the plaintiff's argument goes a bridge too far. The plaintiff argues that it was assigned control of the claim itself, not just a right to receive the proceeds of the claim, and had the unilateral right to determine the insured's scope of loss.

A plain reading of the Authorization text does not support the plaintiff's argument. The Authorization provided that the plaintiff was only assigned the "right and power to make demand upon any potentially liable insurance

5

company for payment." *See* filing 37-2. The Authorization also allowed the plaintiff to "negotiate approval for payment or reimbursement of expenses" with the assignee's insurance company, but that language does not give rise to an assignment of the right to control the claim itself and unilaterally determine the scope of the insured/assignor's loss.

The plaintiff has not directed the Court to relevant statutory authority or case law that supports its sweeping proposition that the entirety of a post-loss insurance claim is assignable. There is a clear distinction between the assignment of a claim and the assignment of the proceeds of a claim. The assignment of a claim cedes control of the claim to the assignee and promotes champerty, but assignment of the proceeds of a claim does not cede control and there is little reason it should not be valid. *Mutual of Omaha Bank v. Kassebaum*, 814 N.W.2d 731, 736 (Neb. 2012).

Nothing in the record indicates that either insured gave up control of their hail damage claims. They assigned only the right to the proceeds of their claims. The plaintiff does not contradict Oddo or Schroeder's representations that they agreed with their respective insurer as to the scope of their loss. Whether Eggers also agreed is immaterial. Simply put, the scope of loss wasn't Eggers' call because control of the claim was never assigned—only a right to the proceeds of the claim.

The second ground for the defendant's alleged breach comes from Eggers' bare assertion in his affidavit that the plaintiff "was never paid in full for all work actually performed." Filing 41 at 8. However, the plaintiff has not adduced any evidence beyond Eggers' bare assertion to support a finding that the plaintiff has not been fully paid for the work actually performed. The plaintiff, or Eggers, has not, for instance, identified work the plaintiff performed that has not been paid in full, produced past due billings or notice

6

of an account balance that is past due, or indicated in any way an amount that remains due and owing. Further, the Court is unable to find any evidence in the record suggesting that the plaintiff has not been paid in full for the work actually performed on both jobs. Here, the plaintiff is the nonmovant, and the burden is on the defendant, as the movant, to show an entitlement to judgment as a matter of law. S*ee* Fed. R. Civ. P. 56(a). But still, there must be something more than the mere existence of a scintilla of evidence in support of the nonmovant's position. *Barber*, 656 F.3d at 791-92. At best, Eggers' assertion may cast some metaphysical doubt as to whether the plaintiff was paid in full for all work actually performed, but that doubt is insufficient as a matter of law given the complete absence of evidence supporting the plaintiff's assertion. No rational trier of fact could find in the plaintiff's favor. *Torgerson*, 643 F.3d at 1042.

In contrast, the defendant adduced evidence in support of its position that the plaintiff was paid in full. The defendant provided affidavits from both insureds—Oddo for MSP and Schroeder for himself—who testified that the plaintiff was paid in full for the work actually performed, that they have never received notice from the plaintiff about an amount still due and owing, and that they considered their hail damage claims to be completed. Filing 37-1 at 3; filing 37-4. Further, the Authorizations Oddo and Schroeder signed required them to acknowledge that the assignment did not discharge their liability for payment of the contractor's services. Filing 37-2. Knowing that the liability for all repairs was ultimately theirs, it is implausible to think that Oddo or Schroeder, the defendants' insureds and the plaintiff's assignors, would state under oath that they considered their hail damage claims to be completed, if there were still necessary repairs to be made, or if the plaintiff had not been fully compensated for the repairs actually made. The Court finds that no

7

rational trier of fact could find in the plaintiff's favor, and the defendants have not breached their insurance policies by failing to pay all benefits due and owing under their insureds' policies. *See Torgerson*, 643 F.3d at 1042.

### FAILURE TO DIRECTLY REMIT PAYMENT

The plaintiff's second claimed policy breach concerns the defendants' failure to remit payments directly to the plaintiff for the work actually performed. The plaintiff alleges that the failure to make all payments directly to the plaintiff is unlawful and contrary to the terms of the assignment, and that failure to include the plaintiff on "any undisputed funds paid to the insureds constitutes a breach of contract." Filing 21 at 5. In support, the plaintiff argues that because the defendants issued payment directly to its insureds first, and then relied on their insureds to reimburse the plaintiff, the payments were unduly delayed and accrued interest. Filing 40 at 15.

The plaintiff, however, has not provided an evidentiary basis for this Court to determine whether any payment was delayed. There is no evidence regarding when the plaintiff performed work and was entitled to payment, when or who the plaintiff submitted invoices to, or when the insurer made payments to its insureds. There are no past due notices in evidence, no letters requesting or demanding payment, and nothing notifying the defendants or its insureds that interest would be due on any outstanding balances.

Further, the plaintiff's Authorization does not specifically assign payment of all monies directly to the plaintiff. The assignment gives the plaintiff "the right and power to make demand upon any potentially liable insurance company for payment." But also, the Authorization provides that the assignor only authorizes the defendants to make payment directly to the plaintiff, or include the plaintiff as a joint payee on any payment. Filing 37-2. Whether the language in this assignment is sufficient to compel the defendants

8

to make direct payment to the plaintiff need not be decided. The actual evidence in the record shows that the plaintiff was paid by its customers, the defendants' insureds, for all work actually performed. The defendants may have put themselves at risk by first routing payment to their insureds and expecting the insureds to then reimburse the plaintiff. But being at risk is far different from suffering actual damages.

The Court finds that the record taken as a whole could not lead a rational trier of fact to find that the defendants breached their insurance policies, or that the plaintiff suffered any damages from the defendants' decision to route payments through their insureds. *Torgerson*, 643 F.3d at 1042. The Court finds that there are no genuine issues for trial, and that the defendants are entitled to judgment as a matter of law.

### III. CONCLUSION

The Court concludes that there is insufficient evidence upon which a jury could conceivably find for the plaintiff on any of its claims. Accordingly, the Court finds that the defendants' motion for summary judgment should be granted regarding all claims in the plaintiff's amended complaint.

IT IS ORDERED:

1. Defendants' motion for summary judgment (filing 35) is granted.

2. Plaintiff's amended complaint (filing 21) is dismissed.

3. Defendants' motion to strike Eggers' affidavit (filing 44) is denied.

4. A separate judgment will be entered.

Dated this 23rd day of July, 2020.

BY THE COURT:

*signature*

John M. Gerrard
Chief United States District Judge